UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

SEASCAPE SHIPPING & TRADING, LLC,

                Petitioner,

    v.

METALEX 2000 S.A.,

                Respondent.

------------------------------------------------------------

20-Cv-9620 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

On November 16, 2020, petitioner Seascape Shipping & Trading, LLC filed this petition to confirm a maritime arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, 9. (Pet., ECF No. 1.) On February 16, after respondent Metalex 2000 S.A. failed to answer or otherwise respond to the petition, the Clerk of Court entered a certificate of default. (ECF No. 21.) Seascape now moves this Court for a default judgment granting its petition and confirming the arbitration award. (ECF No. 22.)

"Default judgments in confirmation[] proceedings," however, "are generally inappropriate." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). Because an unopposed petition to confirm an award "should [be] treated as akin to a motion for summary judgment based on the movant's submissions," *id.*, the Court must conduct its own review of the record to determine that no issue of material fact remains. After reviewing Seascape's petition, the underlying charter party, and the arbitration panel's final award, the Court finds that Seascape has met its burden and accordingly grants its petition to confirm the award.

## I. BACKGROUND

In August 2018, Seascape and Metalex entered into the charter party at issue, which covered the shipment of 28,000 metric tons of iron briquettes from Palua, Venezuela to Oran, Algeria on the vessel LIVADI. (Arb. Award at 1, ECF No. 1-1.) The charter party provided that, while the LIVADI was at anchorage on the Orinoco River in Palau, Metalex would provide and load the iron onto the vessel. (*Id.* at 1-2.) From August 12 to September 5, 2018, the vessel remained at anchorage, but Metalex failed to provide the cargo as agreed. (*Id.* at 2-3.) In March 2019, Seascape commenced arbitration proceedings for demurrage, reimbursement of agency expenses, reimbursement of hire and fuel expended, and loss of earnings. (*Id.* at 1.)

The charter party between Metalex, a Panamanian corporation, and Seascape, which is incorporated in the West Indies, provided for the application of U.S. law and New York arbitration of any dispute by a three-arbitrator panel. (Charter Party at 5, ECF No. 1-2.) After Seascape commenced proceedings, Metalex failed to appoint its own arbitrator. Per the terms of the charter party, Seascape thus chose two arbitrators, who jointly appointed a third. (Arb. Award at 4; Charter Party at 5.)

Although the panel noted that Metalex's participation in the arbitration was "limited"—its sole contributions were "brief submissions" by email from Enio Ortiz, a Metalex agent—the panel found that Metalex "had every opportunity to defend itself against the claims put forth by Seascape, and that Metalex chose not to participate in the proceedings, outside of the limited involvement of Mr. Ortiz." (*Id.* at 5.) Reviewing the matter "on the record before it," the panel found that Seascape's submissions "buil[t] a viable case that Metalex had a contractual duty to provide the agreed cargo to the MV LIVADI, and that they breached that duty." (*Id.* at 6.) Mr. Ortiz's submissions, meanwhile, "did little to advance any feasible defense . . . on the basis that there was a force majeure event that would excuse the Respondent's performance." (*Id.*) Accordingly, on July 15, 2020, the panel found in Seascape's favor, awarding it $952,508.35 in damages, interest, attorneys' fees, and arbitrators' fees. (*Id.*)

Thereafter, Seascape filed a petition to confirm the arbitration award in this Court. As the award arises from a maritime arbitration that occurred in this district, venue and jurisdiction are appropriate pursuant to the FAA, 9 U.S.C. §§ 1, 9; *see* 28 U.S.C. § 1333. On November 30, Seascape moved to serve Metalex by alternate means pursuant to Fed. R. Civ. P. 4(f)(3), on the basis that serving Metalex pursuant to the Inter-American Convention on Letters Rogatory—an "internationally agreed means" of service under Rule 4(f)(1)—would take up to one year due to delays caused by the COVID-19 pandemic. (*See* Lyons Decl. ¶ 4, ECF No. 8.) The Court granted Seascape's motion but, in order to "ensure actual notice to Metalex with reasonable certainty," required that Seascape serve Metalex by four separate alternate means, in addition to commencing service pursuant to the Inter-American Convention. (ECF No. 11.) After complying with this Court's requirements regarding service,[1] and after Metalex still failed to respond to the petition, Seascape requested and received a certificate of default from the Clerk of Court on February 17. (ECF Nos. 20, 21.)

---

[1] Despite four attempts, Seascape was unable to personally serve one required party—Metalex's registered agent in Panama—who appeared to be evading service. (ECF No. 15.) On February 10, upon verification that Seascape had accomplished all other required means of service, the Court waived this final requirement. (ECF No. 17.)

## II.  DISCUSSION

### A.  Default Judgments are Inappropriate in Award Confirmation Proceedings

On February 19, Seascape filed a notice of motion for default judgment in the amount of $952,508.35, plus interest, as provided for in the arbitration award. (ECF No. 22.) On the face of its motion, Seascape appears to have complied with the requirements of Rule 55 governing entry of default judgments: after Metalex failed to respond to the petition to confirm the award, Seascape timely requested and received a certificate of default from the Clerk of Court. *See* Fed. R. Civ. P. 55(a). Seascape then moved, on adequate notice to respondent, for entry of a default judgment from this Court. *See* Fed. R. Civ. P. 55(b)(2). Moreover, Seascape requests only the sum certain contained in its award, and so no hearing is necessary for this Court to conduct an accounting or determine damages. *Id.*

As the Second Circuit has noted, however, "Rule 55 does not operate well in the context of a motion to confirm or vacate an arbitration award." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). Rule 55, tracking the "ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party," *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004), pertains to actions "where only the first step has been taken—i.e., the filing of a complaint—and the court thus has *only* allegations and no evidence before it." *Gottdiener*, 462 F.3d at 107 (emphasis added). A "motion to confirm or vacate an award," meanwhile, "is generally accompanied by a record, such as an agreement to arbitrate and the arbitration award itself." *Id.* at 108. Accordingly, entry of default judgments in such proceedings is "generally inappropriate," and the Court must instead consider the "petition and accompanying record . . . as akin to a motion for summary judgment based on the movant's submissions." *Id* at 109.

In accordance with the standard for a grant of summary judgment, this Court must therefore "determine if [Seascape] has met its burden of demonstrating that no material issue of fact remains for trial.'" *Id.* at 109-10 (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244); *see also* Fed. R. Civ. P. 56(a).

### B.  The Undisputed Facts Support Seascape's Petition to Confirm the Award

Though the more stringent summary judgment standard requires this Court to evaluate the record accompanying Seascape's petition, the FAA makes this a narrow inquiry. "Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *Gottdiener*, 462 F.3d at 110 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). If, upon review of the record, any "ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir. 1972). Indeed, even a "barely colorable

justification for the outcome reached" will suffice. *Gottdiener*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp. v. Local 32B–32J, Service Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).

The undisputed facts contained in the petition to confirm, the underlying charter party, and the arbitration award show that Seascape has easily met this low burden. The charter party provides for New York arbitration under U.S. law of "[a]ny and all differences and disputes of whatsoever nature arising out of this charter." (Charter Party at 5.) And the panel presents more than a "colorable justification" for its decision: after "carefully reviewing all the evidence" presented, the panel found that, by failing to provide the iron briquettes as agreed in the charter party, Metalex "breached its contractual duty to load the vessel, and is liable for damage to" Seascape. (Arb. Award at 6.) The panel further detailed each component of its damages award, and the assumptions it used in making those calculations. (*Id.*) And though the award noted that Metalex's role in the arbitration was "limited," the panel repeatedly urged respondent's participation, extending its deadline for submission of evidence by over two weeks. (*Id.* at 4-5.) Ultimately, the panel concluded that Metalex "had every opportunity to defend itself," and yet "chose not to participate in the proceedings, outside of the limited involvement of Mr. Ortiz." (*Id.* at 5.) Based off the foregoing, the Court finds that no issue of material fact remains and that Seascape is entitled to judgment as a matter of law.

## III. CONCLUSION

For these reasons, Seascape's petition to confirm its July 15, 2020 arbitration award against respondent Metalex in the amount of $952,508.35, plus interest as provided for in the award, is granted.

Dated: New York, New York
       March 19, 2021

SO ORDERED:

Sidney H. Stein, U.S.D.J.